UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

THOMAS R. DILL, JR.,
   Plaintiff,

vs.

COMMISSIONER OF
SOCIAL SECURITY,
   Defendant.

Case No. 1:13-cv-670
Barrett, J.
Litkovitz, M.J.

**REPORT AND
RECOMMENDATION**

Plaintiff brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) for judicial review of the final decision of the Commissioner of Social Security (Commissioner) denying plaintiff's applications for disability insurance benefits (DIB) and supplemental security income (SSI). This matter is before the Court on plaintiff's Statement of Errors (Doc. 13), the Commissioner's response in opposition (Doc. 16), and plaintiff's reply memorandum (Doc. 17).

**I. Procedural Background**

Plaintiff protectively filed applications for DIB and SSI in June 2010, alleging disability since September 1, 2008, due to high blood pressure and arthritis. These applications were denied initially and upon reconsideration. Plaintiff, through counsel, requested and was granted a *de novo* hearing before administrative law judge (ALJ) Albert J. Velasquez. Plaintiff and a vocational expert (VE) appeared and testified at two ALJ hearings held on November 29, 2011, and March 27, 2012, respectively. On April 11, 2012, the ALJ issued a decision denying plaintiff's DIB and SSI applications. Plaintiff's request for review by the Appeals Council was denied, making the decision of the ALJ the final administrative decision of the Commissioner.

II. Analysis

    A. Legal Framework for Disability Determinations

To qualify for disability benefits, a claimant must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. §§ 423(d)(1)(A) (DIB), 1382c(a)(3)(A) (SSI). The impairment must render the claimant unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy. 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process for disability determinations:

> 1) If the claimant is doing substantial gainful activity, the claimant is not disabled.
>
> 2) If the claimant does not have a severe medically determinable physical or mental impairment – *i.e.*, an impairment that significantly limits his or her physical or mental ability to do basic work activities – the claimant is not disabled.
>
> 3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.
>
> 4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.
>
> 5) If the claimant can make an adjustment to other work, the claimant is not disabled. If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009) (citing §§ 404.1520(a)(4)(i)-(v), 404.1520(b)-(g)). The claimant has the burden of proof at the first four steps of the sequential evaluation process. *Id.*; *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541,

2

548 (6th Cir. 2004). Once the claimant establishes a prima facie case by showing an inability to perform the relevant previous employment, the burden shifts to the Commissioner to show that the claimant can perform other substantial gainful employment and that such employment exists in the national economy. *Rabbers*, 582 F.3d at 652; *Harmon v. Apfel*, 168 F.3d 289, 291 (6th Cir. 1999).

### B. The Administrative Law Judge's Findings

The ALJ applied the sequential evaluation process and made the following findings of fact and conclusions of law:

1. The [plaintiff] meets the insured status requirements of the Social Security Act through December 31, 2012.

2. The [plaintiff] has not engaged in substantial gainful activity since September 1, 2008, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3. The [plaintiff] has the following severe impairments: degenerative disc disease with radiculopathy, hypertension, and obesity (20 CFR 404.1520(c) and 416.920(c)).

4. The [plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, [the ALJ] find[s] that the [plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except as follows: He can occasionally balance, stoop, crouch and climb ramps and stairs. He can never kneel, crawl, or climb ladders, ropes or scaffolds. He should avoid work at unprotected heights, around dangerous moving machinery, or operating a motor vehicle, or being around flames or large bodies of water. The tasks should be simple and repetitive. He should perform no overhead work. He should do no repetitive forceful gripping or operation of vibrating tools with the right dominant hand.

6. The [plaintiff] is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).[1]

---

[1] Plaintiff's past relevant work was as a laborer and cleaner. (Tr. 70, 101).

3

7. The [plaintiff] was born [in] . . . 1964 and was 44 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The [plaintiff] has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the [plaintiff] is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the [plaintiff]'s age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the [plaintiff] can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).[2]

11. The [plaintiff] has not been under a disability, as defined in the Social Security Act, from September 1, 2008, through the date of this decision (20 C.F.R. 404.1520(g) and 416.920(g)).

(Tr. 29-34).

C. **Judicial Standard of Review**

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g) and involves a twofold inquiry: (1) whether the findings of the ALJ are supported by substantial evidence, and (2) whether the ALJ applied the correct legal standards. *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007).

The Commissioner's findings must stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229

---

[2]The ALJ relied on the VE's testimony to find that plaintiff would be able to perform 22,500 unskilled, light and sedentary jobs in the regional economy such as bench assembler, hand packager, inspector, and sorter. (Tr. 34, 70-73).

4

(1938)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance. . . ." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). In deciding whether the Commissioner's findings are supported by substantial evidence, the Court considers the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

The Court must also determine whether the ALJ applied the correct legal standards in the disability determination. Even if substantial evidence supports the ALJ's conclusion that the plaintiff is not disabled, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers,* 582 F.3d at 651 (quoting *Bowen*, 478 F.3d at 746). *See also Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 545-46 (6th Cir. 2004) (reversal required even though ALJ's decision was otherwise supported by substantial evidence where ALJ failed to give good reasons for not giving weight to treating physician's opinion, thereby violating the agency's own regulations).

**D. Specific Errors**

On appeal, plaintiff argues that: (1) the ALJ improperly picked and chose from the record to support his conclusions; and (2) the ALJ erred in discounting plaintiff's credibility. (Doc. 13).

1. <u>Whether the ALJ selectively cited the record evidence such that his conclusions lack substantial support</u>.

Plaintiff argues that the ALJ erred by failing to address clinical findings of record that support his claims of disabling burning leg pain, while citing only that evidence of record which supports the ALJ's nondisability determination. Specifically, plaintiff asserts the ALJ's failure to cite to specific clinical findings of positive straight leg raise, antalgic gait, reduced strength

5

and range of motion, decreased sensation, and muscle spasm and tenderness establishes that the ALJ's conclusions are not substantially supported. Plaintiff maintains that the ALJ's failure to consider this evidence is legal error requiring reversal. (Doc. 13 at 7-9).

The instant record includes little by way of medical evidence. Plaintiff received medical treatment at Price Hill Clinic from April 2008 to at least July 2011. (Tr. 375-99). At his initial visit, plaintiff complained of numbness, tingling, and burning sensations. (Tr. 398). Examination results revealed negative straight leg raise. Plaintiff's hypertension and anxiety were treated with medication. (*Id.*). Treatment notes from April and May 2008 include plaintiff's reports of hand and feet swelling and that Neurontin had not relieved his pain. (Tr. 394-95). Plaintiff complained of thigh numbness in June 2008 and he was referred for an MRI. (Tr. 392).

On June 9, 2008, an MRI of plaintiff's lumbar spine revealed mild bilateral facet arthropathy at L1-L2; a minimal disc bulge at L3-L4 with mild bilateral facet arthropathy; mild disc desiccation with moderate disc bulging at L4-L5 with a superimposed broad-based left foraminal to extra foraminal disc protrusion with mild facet arthropathy. There was no significant central canal narrowing though mild bilateral foraminal compromise was noted. (Tr. 450).

August and November 2008 progress notes from Price Hill Clinic include plaintiff's ongoing reports of leg pain in and complaints of arm and hand swelling. (Tr. 391). Plaintiff's next scheduled appointment was in May 2009, but he did not show up for the appointment. (Tr. 390). In August 2009, plaintiff reported worsening lower back pain, aching shoulders, and right hand swelling. Examination notes include observations of tenderness in the right shoulder and

mild swelling to the right hand, but plaintiff was not in distress. (Tr. 388). On February 18, 2010, plaintiff reported chronic low back pain; examination revealed low back tenderness but negative straight leg raise. (Tr. 389). September 30, 2010 progress notes include examination findings of low back tenderness and positive straight leg raise. He was assessed with chronic low back and left extremity pain with unremarkable MRI. The plan was to get an EMG. (Tr. 373). An EMG in October 2010 was minimally abnormal and consistent with very mild, chronic left L4/L5 radiculopathy. (Tr. 373, 448). In November 2011, plaintiff complained of left leg swelling that he associated with taking Lyrica; the swelling resolved within one week after he stopped taking Lyrica. (Tr. 374). January and July 2011 treatment notes reflect that plaintiff had no new complaints; plaintiff reported that he had been well but was still experiencing burning pain in his upper thighs. (Tr. 377, 380).

Plaintiff was referred to Reginald W. Kapteyn, D.O., for pain management. (Tr. 400-22, 447-68). Dr. Kapteyn examined plaintiff on April 14, 2011, and observed limited lumbar flexion and extension, bilateral straight leg raise, and questionable decrease in leg sensation. (Tr. 410). X-rays of plaintiff's lower spine revealed mild arthrosis at L4 and L5 and intervertebral osteochondrosis at L5-S1; Dr. Kapteyn gave plaintiff three transforaminal epidural steroid injections. (Tr. 408-11). At a May 2, 2011 follow-up visit, plaintiff told Dr. Kapteyn that the injections decreased his pain but only for one-and-a-half days. Examination revealed positive straight leg raise and Dr. Kapteyn diagnosed plaintiff with moderate to severe axial and bilateral leg pain and opined that plaintiff had neurogenic claudication. (Tr. 412-15). A May 11, 2011 MRI of plaintiff's lumbar spine revealed degenerative disc changes at L4-L5 with mild central stenosis related to diffuse disc bulge, facet and legamentum flavum hypertrophy, and mild

7

bilateral L4 foraminal narrowing. (Tr. 408-09). The final treatment note from Dr. Kapteyn is from June 21, 2011. (Tr. 401-03). Plaintiff had positive left straight leg raise, minimal tenderness through his left IT band, and full muscle strength throughout. (Tr. 401).

Plaintiff was also treated at the University Hospital Clinic in March 2011 for pain. Examination revealed full strength; reduced range of motion in the hips and knees; pain with straight leg raise; decreased sensation to pin, light touch L4 distribution; and an antalgic gait. (Tr. 455-58).

The only medical source opinions of record are those of the state agency reviewing physicians. W. Jerry McCloud, M.D. reviewed the record on August 27, 2010, and determined that plaintiff retained the residual functional capacity to perform light work.[3] (Tr. 112-15). Leon D. Hughes, M.D., reviewed the record in December 10, 2010, and opined that plaintiff was capable of light work with additional standing, sitting, and postural limitations. (Tr. 130-34). The ALJ generally agreed with Drs. McCloud and Hughes, and found that plaintiff retained the RFC for light work with additional postural limitations and right hand manipulation limitations to address plaintiff's complaints of hand swelling. (Tr. 30, 32).

Plaintiff's assignment of error does not specifically challenge the ALJ's RFC assessment or how he weighed the opinion evidence of record. Rather, plaintiff broadly asserts that the ALJ's discussion of the evidence was one-sided and focused on that evidence which cast him in a more capable light while ignoring findings that supported his claims of disabling leg pain.

---

[3]"Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work [the claimant] must have the ability to do substantially all of these activities." 20 C.F.R. § 404.1567(b).

Plaintiff asserts the ALJ failed to discuss Dr. Kapteyn's findings of, *inter alia*, positive straight leg raise, antalgic gait, and reduced range of motion. Plaintiff contends that the ALJ's failure to address all of the records supporting his claim requires reversal of the ALJ's decision. (Doc. 13 at 7-9).

The ALJ is obligated to consider the record as a whole. *Hurst v. Sec'y of H.H.S.*, 753 F.2d 517, 519 (6th Cir. 1985). It is essential for meaningful appellate review that the ALJ articulate reasons for crediting or rejecting particular sources of evidence. *Morris v. Sec'y of H.H.S.*, No. 86-5875, 1988 WL 34109, at *2 (6th Cir. April 18, 1988). Otherwise, the reviewing court is unable to discern "if significant probative evidence was not credited or simply ignored." *Id.* (citing *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981)). The ALJ need not provide a "written evaluation of every piece of testimony and evidence submitted. However, a minimal level of articulation of the ALJ's assessment of the evidence is required in cases in which considerable evidence is presented to counter the agency's position." *Id.* (quoting *Cotter*, 642 F.2d at 705). An ALJ "cannot 'pick and choose' only the evidence that supports his position." *Kester v. Astrue*, No. 3:07cv00423, 2009 WL 275438, at *9 (S.D. Ohio Feb. 3, 2009) (citing *Loza v. Apfel*, 219 F.3d 378, 393 (5th Cir. 2000); *Switzer v. Heckler*, 742 F.2d 382, 385-86 (7th Cir. 1984); *Kuleszo v. Barnhart*, 232 F. Supp.2d 44, 57 (S.D.N.Y. 2002)).

Plaintiff has not shown that the ALJ failed to consider the record as a whole. The ALJ considered the medical evidence of plaintiff's impairments and the opinions offered by the nonexamining medical sources (the only medical source opinions of record) in assessing plaintiff's RFC. Contrary to plaintiff's assertion, the ALJ did discuss the evidence from Dr. Kapteyn, including the doctor's findings of antalgic gait, muscle tenderness, and reduced

9

reflexes. *See* Tr. 31, citing Tr. 464-67. The ALJ also noted that Dr. Kapteyn administered epidural steroid injections to address plaintiff's complaints of pain and plaintiff's subsequent report of minimal pain reduction. *See* Tr. 31-32, citing Tr. 410, 412-15. While the ALJ did not specifically address every single examination finding of record, he was not required to discuss every medical finding in the record. *Morris*, 1988 WL 34109, at *2. Upon review of the record as a whole and in consideration of the minimal medical records presented by plaintiff supporting his claims of disabling leg pain, the Court finds that the ALJ adequately considered the evidence in making his conclusions. The Court notes that the clinical findings cited by plaintiff say nothing about the functional limitations resulting therefrom and plaintiff has put forth no evidence from a medical source establishing that he has greater limitations than those found by the ALJ. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003) (plaintiff "bears the burden of proving the existence and severity of limitations caused by [his] impairments"). The undersigned finds that the ALJ did not improperly ignore evidence supporting plaintiff's claim in his decision. Rather, his discussion fairly portrays plaintiff's impairments given the minimal medical record and the fact that the clinical and objective findings largely reflect a mild level of impairment.

Accordingly, plaintiff's first assignment of error should be overruled.

2. <u>Whether the ALJ erred in assessing plaintiff's credibility</u>.

For her second and final assignment of error, plaintiff contends the ALJ failed to explain his decision finding plaintiff's subjective allegations less than fully credible such that the matter must be reversed and remanded. To the extent the ALJ noted noncompliance with medical treatment as a basis for discounting plaintiff's credibility, plaintiff argues the ALJ erred by failing

10

to properly analyze this issue by considering plaintiff's explanation for gaps in treatment or medication noncompliance. Plaintiff contends the ALJ's discussion improperly "overemphasized certain aspects of the case to [p]laintiff's detriment." (Doc. 13 at 11).

It is the province of the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant. *Rogers*, 486 F.3d at 247 (citations omitted). In light of the Commissioner's opportunity to observe the individual's demeanor, the Commissioner's credibility finding is entitled to deference and should not be discarded lightly. *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001); *Kirk*, 667 F.2d at 538. "If an ALJ rejects a claimant's testimony as incredible, he must clearly state his reasons for doing so." *Felisky v. Bowen*, 35 F.3d 1027, 1036 (6th Cir. 1994). The ALJ's articulation of reasons for crediting or rejecting a claimant's testimony must be explicit and "is absolutely essential for meaningful appellate review." *Hurst v. Sec'y of H.H.S.*, 753 F.2d 517, 519 (6th Cir. 1985) (citing *Zblewski v. Schweiker*, 732 F.2d 75, 78 (7th Cir. 1984)).

The ALJ is not free to make credibility determinations based solely upon an "intangible or intuitive notion about an individual's credibility." *Rogers*, 486 F.3d at 247. Rather, such determination must find support in the record. *Id.* Whenever a claimant's complaints regarding symptoms or their intensity and persistence are not supported by objective medical evidence, the ALJ must make a determination of the credibility of the claimant in connection with his or her complaints "based on a consideration of the entire case record." *Id.* Consistency between a claimant's symptom complaints and the other evidence in the record tends to support the credibility of the claimant while inconsistency, although not necessarily defeating, should have the opposite effect. *Id.*

11

Substantial evidence supports the ALJ's determination that plaintiff's subjective statements regarding the severity of his impairments are not fully credible. The ALJ noted throughout his decision the various ways in which plaintiff's statements of disabling pain and limitations were inconsistent with the medical evidence of record in determining to discount plaintiff's credibility. The ALJ discussed the intermittent nature of plaintiff's medical treatment and the lack of objective findings supporting plaintiff's allegations. MRI evidence showed largely mild degenerative disc disease and mild arthropathy and EMG evidence showed "very mild" radiculopathy. (Tr. 31-32, citing Tr. 365, 408-09, 448). The ALJ also discussed the results of several of plaintiff's physical examinations and accurately described the largely normal findings, with occasional findings of, *inter alia*, mild back tenderness, positive straight leg raise, and antalgic gait. (Tr. 31-32, citing Tr. 353, 464-67). The ALJ reasonably concluded that plaintiff's allegations of disabling symptoms was inconsistent with the objective and clinical evidence of record, which reflected an individual with some functional limitations but who, as opined by the medical source opinions of record, retained the functional capacity to perform light work. *See Blacha v. Sec'y of H.H.S.*, 927 F.2d 228, 231 (6th Cir. 1990) (an ALJ may discount a claimant's credibility where the objective evidence reflects mild findings and is inconsistent with the claimant's subjective allegations). Given the dearth of objective or clinical findings supporting plaintiff's allegations of disabling symptoms, the ALJ's decision to discount plaintiff's credibility for lack of support in the record is substantially supported.

To the extent plaintiff argues the ALJ erred by failing to properly analyze plaintiff's noncompliance with treatment, this argument is not well-taken. The ALJ noted throughout his decision the ways in which plaintiff was noncompliant with treatment by either failing to show

12

up for medical appointments or not taking prescribed medications. *See* Tr. 31-32, citing Tr. 351-52 (August 2009 treatment notes include plaintiff's report that he stopped taking pain medication because it was causing chest pains; progress notes from February 2010 reflect that plaintiff was taking nothing for his pain despite being previously prescribed Vicodin); Tr. 372 (August 2010 treatment notes include observations that plaintiff was noncompliant with medications, appointments, and referrals). While plaintiff contends the ALJ over-emphasized this evidence, these are the only two references to plaintiff's compliance in his decision. Moreover, insofar as plaintiff contends the ALJ did not properly consider plaintiff's explanations for noncompliance, review of the ALJ's decision shows that the ALJ recited plaintiff's explanation that "he doesn't go to the doctor because he doesn't have any money [and that h]e takes over-the-counter medication for pain." (Tr. 32). Plaintiff argues that the ALJ did not engage in the proper analysis of his explanation, but the only requirement is that the ALJ consider plaintiff's explanations. *See* SSR 96-7p, 1996 WL 374186, at *1-2 (1996).[4] The ALJ's decision reflects he considered plaintiff's explanation for noncompliance and therefore complied with his obligations. In any event, the ALJ's credibility finding was based on the lack of medical evidence supporting plaintiff's subjective allegations and not on the basis of noncompliance. *See* Tr. 33 (the ALJ's decision provides that the evidence "fails to establish that [plaintiff's impairments] rise to a disabling level of severity. Accordingly, [plaintiff]'s

---

[4]"Social Security Rulings do not have the force and effect of law, but are 'binding on all components of the Social Security Administration' and represent 'precedent final opinions and orders and statements of policy and interpretations' adopted by the Commissioner. 20 C.F.R. § 402.35(b)(1). In *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 549 (6th Cir. 2001), the court refrained from ruling on whether Social Security Rulings are binding on the Commissioner in the same was as Social Security Regulations, but *assumed* that they are. [The Court] makes the same assumption in this case." *Ferguson v. Comm'r of Soc. Sec.*, 627 F.3d 269, 272 n.1 (6th Cir. 2010) (emphasis in original).

allegations concerning his impairments and their impact on his ability to work are not fully credible.").

In light of the evidence considered by the ALJ, the lack of medical evidence supporting plaintiff's subjective allegations, plaintiff's history of noncompliance, and the deference due to the ALJ in making credibility determinations, the undersigned concludes the ALJ's credibility finding is supported by substantial evidence.

Accordingly, plaintiff's second assignment of error should be overruled.

**IT IS THEREFORE RECOMMENDED THAT:**

The decision of the Commissioner be **AFFIRMED** and this matter be closed on the docket of the Court.

Date: 10/6/14

Karen L. Litkovitz
United States Magistrate Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

THOMAS R. DILL, JR.,
    Plaintiff,

vs.

COMMISSIONER OF
SOCIAL SECURITY,
    Defendant.

Case No. 1:13-cv-670
Barrett, J.
Litkovitz, M.J.

**NOTICE TO THE PARTIES REGARDING THE FILING OF OBJECTIONS TO R&R**

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas* v. *Arn,* 474 U.S. 140 (1985); *United States* v. *Walters,* 638 F.2d 947 (6th Cir. 1981).